PETER L. CARR, IV (#256104)
pcarr@thePLClawgroup.com
NA'SHAUN L. NEAL (#284280)
nneal@thePLClawgroup.com
LAUREN K. MCRAE (#331296)
lmcrae@thePLClawgroup.com
**PLC LAW GROUP, APC**
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895
ATTORNEYS FOR PLAINTIFF
KHALIQ MCCRACKEN

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHALIQ McCRACKEN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COUNTY OF INYO;<br>CALIFORNIA HIGHWAY<br>PATROL; DEPUTY JOHN<br>BARTLETT (#651); CORPORAL<br>JOSEPH KAPTURKIEWICZ<br>(#658); OFFICER ADAM<br>CARRASCO; and DOES 1 through<br>10 inclusive,<br><br>                    Defendants. | Case No. 1:25-cv-00165-KES-CDB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF INYO, DEPUTY JOHN BARTLETT AND CORPORAL JOSEPH KAPTURKIEWICZ' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>*Before Honorable Kirk E. Sherriff*<br><br>          <u>Hearing Information</u><br>Date:          May 19, 2025<br>Time:          1:30 p.m.<br>Ctrm.:          6 |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................1

II.   FACTUAL BACKGROUND ...........................................1

III. LEGAL STANDARD ............................................................2

IV.   ARGUMENT .........................................................................3

   A.   PLAINTIFF HAS PROPERLY PLED AN UNLAWFUL DETENTION CLAIM ...............3

   B.   PLAINTIFF HAS PROPERLY PLED AN EXCESSIVE FORCE CLAIM UNDER SECTION 1983 ....................................................................4

   C.   PLAINTIFF PROPERLY PLED AN EQUAL PROTECTION CLAIM UNDER SECTION 1983......................................................................7

   D.   PLAINTIFF PROPERLY PLED A FIRST AMENDMENT RETALIATION CLAIM UNDER SECTION 1983 ..................................................................11

   E.   PLAINTIFF PROPERLY PLED A *MONELL* CLAIM UNDER SECTION 1983 ...........13

   F.   PLAINTIFF PROPERLY PLED A BATTERY CLAIM UNDER CALIFORNIA LAW.....16

   G.   PLAINTIFF PROPERLY PLED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA LAW ....................................................16

   H.   PLAINTIFF PROPERLY PLED A BANE ACT CLAIM UNDER CALIFORNIA LAW...17

   I.   PLAINTIFF PROPERLY PLED A RALPH ACT CLAIM UNDER CALIFORNIA LAW .18

   J.   DEFENDANT KAPTURKIEWICZ IS NOT ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EXCESSIVE FORCE CLAIM ....................................................20

   K.   BECAUSE AMENDMENT WILL NOT BE FUTILE, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT ....................................................20

V.  CONCLUSION .....................................................................21

1

## CASES

2   *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1110 (N.D. Cal. 2011) ...............................6

3   *Adamson v. City of S.F.,* No. 13-cv-05233-DMR, 2015 U.S. Dist. LEXIS 124588,

4   at *25-27 (N.D. Cal. Sep. 17, 2015) ....................................................................20

5   *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) ...............15

6   *Allen v. City of Sacramento*, 234 Cal. App. 4th 41 (2015)....................................17

7   *Arizona v. Johnson*, 555 US 323, 333 (2009) .........................................................4

8   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................2

9   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .........................................2, 9

10  *Bradford v. Cty. of Oakland*, No. 19-cv-10395, 2020 U.S. Dist. LEXIS 187477, at

11  *16 (E.D. Mich. Oct. 9, 2020) (No. 19-CV-10395, 2020 WL 5993217, at *6......5

12  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, 89 Cal. Rptr. 3d 801 (2009)....16

13  *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986 (9th Cir.

14  2011) ....................................................................................................................21

15  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).........................11

16  *Carrasco v. City of Glendora*, No. CV 21-05965-MWF (ASx), 2022 U.S. Dist.

17  LEXIS 214997, at *21 (C.D. Cal. Aug. 3, 2022).................................................11

18  *Cassels v. Liggett*, No. CIV S-10-0775 MCE DAD P, 2011 U.S. Dist. LEXIS

19  110161, at *34 (E.D. Cal. Sep. 26, 2011) .............................................................6

20  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)...............15

21  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)................18

22  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)..........7

23  *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).................................................11

24  *Comm. Concerning Cmty. Improvement  v. City of Modesto*, 583 F.3d 690, 703

25  (9th Cir. 2009)........................................................................................................9

26  *Connick v. Thompson*, 563 U.S. 51, 62, (2011) ....................................................14

27  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987 ....................21

28

*De Jesus Ortega Melendres v. Arpaio*, 598 F. Supp. 2d 1025, 1037 (2009) ............8

*Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)................................6

*Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) ...........................12

*Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1993)...........................16

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ......21

*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002) .............9

*Gibson v. Cty.of Washoe*, 290 F.3d at 1194-95 (2002) .........................................15

*Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011)................................5

*Gonzalez v. City of Tustin*, No. 8:23-cv-01274-FWS-ADS, 2024 U.S. Dist. LEXIS 99368, at *18 (C.D. Cal. June 4, 2024)................................................14

*Graham v. Connor*, 490 U.S. 386, 396 (1989)........................................4

*Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ........................................20

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) .........................................11

*Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1004 (N.D. Cal. 2011)..............17

*Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 975 (N.D. Cal. 2017), *aff'd*, 897 F.3d 1125, 1139 (9th Cir. 2018) ....................................................20

*Illinois v. Caballes*, 543 US 405, 407 (2005)..........................................4

*Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020) ...................................................................................................12

*James v. City of Seattle*, No. C10-1612JLR, 2011 U.S. Dist. LEXIS 142680, 2011 WL 6150567, at *13 (W.D. Wash. Dec. 12, 2011)................................7

*Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 926 (N.D. Cal. 2014) ..........17

*Jones v. Kmart Corp.*, 17 Cal. 4th 329, 332 (1998) .........................................17

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009)............19

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) ..........................................3

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008).........................9

*Levine v. Safeguard Health Enterprises, Inc.*, 32 Fed.App'x. 276 (9th Cir. 2002).21

*Loggervale v. Holland*, 677 F. Supp. 3d 1026, 1049 (N.D. Cal. 2023) ...................8

*Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) ........................3

*Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015)....................17

*Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261 (9th Cir. 2016).....................8

*Morales v. City and County of San Francisco*, 603 F.Supp. 3d 841 (N.D. Cal. May 20, 2022) ......................................................................................................6

*Navarro v. Block*, 72 F.3d 712, 714-15 (9th Cir. 1996) ..................................13

*Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019).........................13

*Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012)..........................5, 20

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).........................................11

*O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)...............................11

*Quezada v. City of L.A.*, 222 Cal. App. 4th 993 (2014...................................18

*Ramirez v. City of San Jose*, No. 21-cv-08127-VKD, 2022 U.S. Dist. LEXIS 139710, 2022 WL 3139521, at *4 (N.D. Cal. Aug. 5, 2022)......................10, 14

*Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).......................18

*Rodriguez v. United States*, 575 US 348, 354-355 (2015) ....................................3

*Saenz v. Chavez*, No. 1:11-cv-01872-AWI-SKO (PC), 2016 U.S. Dist. LEXIS 22721, at *26 (E.D. Cal. Feb. 24, 2016) ..........................................12

*Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).........................7

*Slice v. Ferriter*, 448 F. App'x 725, 726 (9th Cir. 2011).........................12

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)..................................3, 16

*Trerice v. Blue Cross of Cal.*, 209 Cal.App.3d 878, 883 (1989).........................17

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ...............................13

*United States v. Armstrong*, 517 U.S. 456, 465 (1996) ..............................7

*United States v. Gorman*, 859 F3d 706, 715 (9th Cir 2017) ....................................4

*United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993) .........................18

*Valdez v. City of San Jose*, No. 4:09-CV-0176 KAW, 2013 U.S. Dist. LEXIS 160738, 2013 WL 6108052, at *8-9 (N.D. Cal. Nov. 18, 2013) ........................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Waters v. Howard Sommers Towing, Inc.*, Case No. CV-10-5296-CAS (AJWx),
    2011 U.S. Dist. LEXIS 158890, 2011 WL 2601835, at *6 (C.D. Cal. June 30,
    2011) ....................................................................................................................9

*Whiting v. Dep't of the Cal. Highway Patrol*, No. EDCV 18-2652-CAS (JEM),
    2020 U.S. Dist. LEXIS 178167, at *20 (C.D. Cal. Sep. 1, 2020)........................10

*Whren v. United States*, 517 U.S. 806, 808 (1996) ...............................................7,10

*Winterrowd v. Nelson*, 480 F.3d 1181, 1185 n.7 (9th Cir. 2007).............................6

## **STATUTES**

California Civil Code section 51.7 ..........................................................................18

## **RULES**

Federal Rule of Civil Procedure 12(b)(6)................................................................2, 9

Federal Rule of Civil Procedure 8(a)(2)................................................................2, 3, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  <u>INTRODUCTION</u>

Plaintiff Khaliq McCracken hereby opposes and Defendants County of Inyo, Deputy John Bartlett and Corporal Joseph Kapturkiewicz' motion to dismiss Plaintiff's Complaint. Despite Defendants' claims, Plaintiff has alleged sufficient facts to state his claims that arose from Deputy John Bartlett and Corporal Joseph Kapturkiewicz' discriminatory and lawless behavior.

### II.  <u>FACTUAL BACKGROUND</u>[1]

Plaintiff Khaliq McCracken, a 30-year-old African American male, was traveling to Mammoth with a Caucasian female friend in the early morning hours of January 16, 2024. ¶ 1. At approximately 1:00 a.m., California Highway Patrol ("CHP") Officer Adam Carrasco initiated a traffic stop on Mr. McCracken for an alleged speeding violation. ¶ 2. Officer Carrasco issued Mr. McCracken a citation approximately 15 minutes later. ¶ 3.

While Mr. McCracken remained stopped, Inyo County Sheriff's Deputy Bartlett, a K9 officer, arrived at the scene. ¶ 4. Officer Carrasco instructed Mr. McCracken to remain in his vehicle while he conferred with Deputy Bartlett. ¶ 5. Shortly thereafter, Officer Carrasco returned to Mr. McCracken's vehicle and requested consent to conduct a search of the vehicle. ¶ 6. Mr. McCracken expressly declined to provide consent for any search or seizure. ¶ 7. Despite the lack of consent and the fact that the traffic citation had already been issued, Officer Carrasco and Deputy Bartlett extended the stop by deploying a police K9 to sniff the exterior of Mr. McCracken's vehicle. ¶ 8. The K9 did not indicate the presence of contraband by barking, lunging, or providing any other alert. ¶ 9.

Defendants repeatedly demanded that Mr. McCracken admit to possessing drugs when there was no factual basis for such an accusation. ¶ 10. Despite the

---

[1] All citations in this Section are to Plaintiff's Complaint (ECF No. 1).

absence of probable cause or reasonable suspicion, Mr. McCracken and his friend were ordered out of the vehicle. ¶ 11. Mr. McCracken and his friend complied with the officers' orders. ¶ 12. A second CHP officer, identified as Doe 1, arrived at the scene and monitored Mr. McCracken and his friend while Officer Carrasco,

Deputy Bartlett, and the K9 conducted a search of Mr. McCracken's vehicle. ¶ 13. The officers searched inside Mr. McCracken's vehicle, including within his luggage and other closed containers or compartments, without consent, reasonable suspicion, or probable cause. ¶ 14. Mr. McCracken and his friend remained outside in the frigid cold while the officers unlawfully searched Mr. McCracken's vehicle. ¶ 17. After failing to discover any contraband, the officers informed Mr. McCracken that he was free to leave. ¶ 18.

As a direct result of the officers' unlawful conduct, Mr. McCracken suffered and continues to suffer severe emotional distress, anxiety, and mental anguish. ¶ 21.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted."  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556.) The plausibility standard is "not akin to a 'probability requirement,'" but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of

entitlement to relief.  550 U.S. at 556 n.3.  While Rule 8 does not require "detailed factual allegations," it nevertheless "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Thus, allegations in a complaint must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it.  Also, the allegations must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In considering Defendants' motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe those facts, as well as the inferences from those facts, in the light most favorable to Plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected.  *Id*. at 1130-31.

## IV.  <u>ARGUMENT</u>

### A. Plaintiff Has Properly Pled an Unlawful Detention Claim

Contrary to Defendants' assertions, Plaintiff has adequately alleged that his prolonged detention after the issuance of the traffic citation violated his Fourth Amendment rights. Traffic stops can generally last only as long as reasonably necessary to carry out the mission of the stop. See *Rodriguez v. United States*, 575 US 348, 354-355 (2015). The mission of a traffic stop equates to determining whether to issue a ticket, checking the driver's license, determining if outstanding warrants exist, and inspecting registration and insurance. *Id*. at 349.

Plaintiff alleges that after Officer Carrasco had already issued a citation, Deputy Bartlett arrived and extended the stop by deploying his K9 to conduct a sniff of the vehicle. This prolongation occurred despite Plaintiff's explicit refusal

to consent to any search. Unrelated investigations can prolong a stop only if law enforcement has independent reasonable suspicion justifying the prolongation. See *United States v. Gorman*, 859 F3d 706, 715 (9th Cir 2017). Plaintiff's Complaint clearly alleges that no such reasonable suspicion existed.

Furthermore, courts have recognized that "a seizure that is justified solely by the interest in issuing a traffic ticket can become unlawful if it is prolonged beyond the reasonably required time to complete that mission." *Illinois v. Caballes*, 543 US 405, 407 (2005). When the traffic-based inquiries are completed, the officer's authority for the seizure ends. *Rodriguez*, 575 U.S. at 354. Even if officers complete traffic-based inquiries faster than normal, this does not buy them time to make unrelated inquiries. See *Arizona v. Johnson*, 555 US 323, 333 (2009).

Plaintiff has adequately alleged that Deputy Bartlett and Corporal Kapturkiewicz unlawfully extended a completed traffic stop without reasonable suspicion, in violation of his Fourth Amendment rights. Defendants' motion to dismiss this claim should therefore be denied.

**B. Plaintiff Has Properly Pled an Excessive Force Claim Under Section 1983**

Plaintiff has adequately alleged that Corporal Kapturkiewicz' aggressive act of chest-bumping him constituted excessive force in violation of the Fourth Amendment. Contrary to Defendants' characterization, this physical contact was not de minimis force that falls outside constitutional protection.

To determine whether a particular use of force is excessive, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Ninth Circuit has established a three-step analysis: (1) assessing the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) evaluating the government's interest in the use of force; and (3) balancing the

gravity of the intrusion against the government's need for that intrusion. *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011). With regard to the second factor, courts evaluate the state's interest by considering "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396).

Here, all Graham factors decisively favor Plaintiff Ms. McCracken. When the chest-bump occurred, Ms. McCracken had committed no crime—officers had completed their search, found nothing illegal, and explicitly informed him he was free to leave. Ms. McCracken posed no threat to officer or public safety—he was merely exercising his constitutionally protected right to criticize the officer's unfounded accusations. Ms. McCracken was neither resisting arrest nor attempting to escape, as he was not under arrest and had been expressly permitted to depart. With all *Graham* factors weighing against any use of force, even minimal physical contact becomes constitutionally problematic, as the Ninth Circuit emphasizes that "when the governmental interest is insubstantial, the application of even minimal force may be unreasonable". *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012).

Relevant case law directly contradicts the defendants' characterization of chest-bumping as de minimis force beyond constitutional scrutiny. In *Bradford v. County of Oakland*, the court rejected the defendants' de minimis argument regarding an "aggressive chest bump," recognizing the plaintiff's "clearly established right to be free from [] unnecessary and violent force where he was not resisting and posing no threat to officers" *Bradford v. Cty. of Oakland*, No. 19-cv-10395, 2020 U.S. Dist. LEXIS 187477, at *16 (E.D. Mich. Oct. 9, 2020) (No. 19-CV-10395, 2020 WL 5993217, at *6. Similarly, in *Cassels v. Liggett*, the court explicitly rejected the contention that an "unprovoked" chest bump constitutes de minimis force, particularly absent legitimate justification for physical contact.

1  *Cassels v. Liggett*, No. CIV S-10-0775 MCE DAD P, 2011 U.S. Dist. LEXIS
2  110161, at \*34 (E.D. Cal. Sep. 26, 2011).

3      The timing and context reveal that Corporal Kapturkiewicz' action was
4  deliberate intimidation and retaliation against constitutionally protected speech.
5  This physical contact occurred after the encounter had effectively concluded—after
6  the search revealed no contraband and after Mr. McCracken was told he could
7  leave. The only intervening event between being told he was free to go and being
8  physically chest-bumped was Mr. McCracken's verbal criticism of the officers'
9  accusations, demonstrating that the chest bump was retaliation against protected
10  speech rather than legitimate law enforcement action. See *Adams v. Kraft*, 828 F.
11  Supp. 2d 1090, 1110 (N.D. Cal. 2011) (holding that the Court cannot conclude the
12  officers' use of force was justified because, while facts must be considered
13  objectively without regard to officers' subjective motivation for using force,
14  alleged underlying retaliatory motivations of officers could cast doubt on their
15  version of the incident, creating a factual dispute for the trier of fact to resolve)
16  (citing *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 n.7 (9th Cir. 2007)).

17      While Defendants cite *Morales v. City and County of San Francisco*, 603
18  F.Supp. 3d 841 (N.D. Cal. May 20, 2022), to argue that a chest bump does not
19  constitute excessive force, that case is readily distinguishable. In *Morales,* there
20  was reasonable suspicion of child abuse, which is a severe crime. In this case, the
21  chest bump occurred after Mr. McCracken had been told he was free to leave
22  following a fruitless search during a traffic stop. *See Young v. County of Los*
23  *Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011) (holding that a traffic violation
24  provided little support for use of force); *see also Deville v. Marcantel*, 567 F.3d
25  156, 167 (5th Cir. 2009) (holding that speeding was a minor traffic violation,
26  making "the need for force substantially lower" than if a serious crime was
27  suspected). The plaintiff's resistance in the *Morales* matter further distinguishes
28  that case from this one. Unlike the plaintiff in *Morales,* Mr. McCracken did not

resist the officers at any point.

At this litigation stage, where all factual allegations must be accepted as true and construed favorably to the plaintiff, the Complaint adequately states an excessive force claim that warrants full factual development rather than dismissal. Accordingly, Defendants' motion to dismiss Plaintiff's excessive force claim should be denied.

## C. Plaintiff Properly Pled an Equal Protection Claim Under Section 1983

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Racial profiling can constitute a deprivation of a citizen's right to equal protection under the law. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("the Constitution prohibits selective enforcement of the law based on considerations such as race" and "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause"). The standards for alleging a racial profiling claim are the same as for other equal protection claims. *United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("the requirements for a selective-prosecution claim draw on ordinary equal protection standards" (internal quotation marks and citation omitted)). "To establish a claim of racial profiling, the plaintiff must establish that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *James v. City of Seattle*, No. C10-1612JLR, 2011 U.S. Dist. LEXIS 142680, 2011 WL 6150567, at *13 (W.D. Wash. Dec. 12, 2011) (citing *Armstrong*, 517 U.S. at 465). It is sufficient if the "defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and emphasis omitted).

The defendants' motion to dismiss incorrectly asserts that Plaintiff has failed to state a claim for violation of the Equal Protection Clause. Contrary to their

arguments, the Complaint contains sufficient factual allegations to establish both discriminatory effect and discriminatory intent.

Regarding discriminatory effect, the Complaint specifically cites statistical evidence in paragraph 75(e) showing that according to data reported by the Inyo County Sheriff's Department in 2023 pursuant to the Racial and Identity Profiling Act ("RIPA"), officers were 7.6 times more likely to stop Black drivers than White drivers. This statistical evidence directly contradicts Defendants' assertion that Plaintiff has not alleged disparate treatment of similarly situated individuals and provides a factual foundation for the discriminatory effect element of an Equal Protection claim. See *De Jesus Ortega Melendres v. Arpaio*, 598 F. Supp. 2d 1025, 1037 (2009) (denying defendants' motion to dismiss plaintiffs' equal protection claim, finding that the plaintiffs sufficiently pled discriminatory effect where plaintiffs alleged the sheriff's department stopped White drivers at much lower rates than Hispanic drivers).

Turning to discriminatory intent, Defendants misapply the pleading standard by suggesting that direct evidence of discriminatory intent is required at this stage, when courts recognize that intent can be inferred from circumstantial evidence and the totality of relevant facts. See *Loggervale v. Holland*, 677 F. Supp. 3d 1026, 1049 (N.D. Cal. 2023) (holding discriminatory intent can be established through circumstantial evidence, and the absence of explicit discriminatory statements does not preclude a finding of intent). In this case, Defendants' discriminatory intent can be inferred from the RIPA data evidencing Inyo County deputies' disparate treatment towards Black drivers Plaintiff's Complaint. See *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261 (9th Cir. 2016) (holding courts may consider statistical evidence showing a discriminatory impact when determining whether a discriminatory intent or purpose exists); *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009)(holding proof of disproportionate impact on an identifiable group, such as evidence of

gross statistical disparities, can satisfy the discriminatory intent requirement for equal protection claim). Defendants' discriminatory intent can also be inferred from the pretextual nature of the deputies' conduct during the stop. Viewed against the backdrop of a Black male driver and white female passenger, the Defendant Deputies' actions—demanding baseless drug admissions, conducting an unwarranted detention after issuing the citation, and facilitating an invasive K9 search without consent or probable cause—strongly suggest that racial profiling was the sole motivation for the stop. These specific, non-conclusory allegations provide a sufficient factual basis to infer discriminatory intent and unequal treatment. See *Waters v. Howard Sommers Towing, Inc.*, Case No. CV-10-5296-CAS (AJWx), 2011 U.S. Dist. LEXIS 158890, 2011 WL 2601835, at *6 (C.D. Cal. June 30, 2011) (denying a motion to dismiss equal protection claim where the plaintiff alleged there was no reason other than racial profiling to justify a stop); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008) ("[I]n an equal protection claim based on *selective enforcement* of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." (citation and quotation marks omitted) (emphasis in original)).

When viewed in the light most favorable to Plaintiff, the allegations in the Complaint are more than sufficient to state a plausible Equal Protection claim that should survive the motion to dismiss. The Ninth Circuit has clearly rejected "proof requirements regarding improper motive in constitutional tort cases brought against individual defendants". *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1124 (9th Cir. 2002); *see Twombly*, 550 U.S. at 556 (emphasizing that Rule 8(a)(2) requires only a "short and plain" statement of the claim and explaining that complaints survive 12(b)(6) motions if there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct). In this case, the detailed circumstances surrounding Defendant Deputies' conduct

present a plausible scenario of racially motivated law enforcement action, warranting further investigation. *See Whiting v. Dep't of the Cal. Highway Patrol*, No. EDCV 18-2652-CAS (JEM), 2020 U.S. Dist. LEXIS 178167, at *20 (C.D. Cal. Sep. 1, 2020) (noting the discriminatory intent issue may be more properly addressed when there is a more complete factual record when denying defendant's motion to dismiss plaintiff's equal protection claim based on racial profiling).

Defendants incorrectly suggest that racial awareness must precede the initial stop for Plaintiff's equal protection claim to survive their motion to dismiss. Defendants fail to acknowledge that Equal Protection violations can occur at any point during a police encounter, not just at the initial stop decision. *See Wren v. United States*, 517 U.S. 806, 808 (1996) (right to equal protection may be violated when officers use a traffic violation as a pretext to investigate an individual due to their race). The constitutional analysis focuses on when discriminatory intent and treatment occur. In this case, the alleged discriminatory conduct is Defendant Deputies' decision to unlawfully prolong the detention and illegally searched Mr. McCracken's vehicle—decisions that were clearly made *after* Defendants spoke with Mr. McCracken and perceived his race. Thus, Defendants cannot justify their intentional discriminatory conduct during the stop merely by claiming Officer Carrasco was unaware of Mr. McCracken's race when he initially stopped him. And regardless, a jury could infer that Officer Carrasco perceived Mr. McCracken's race prior to pulling him over, as this is not a case that involves tinted windows. See *Ramirez v. City of San Jose*, No. 21-cv-08127-VKD, 2022 U.S. Dist. LEXIS 139710, at *13 (N.D. Cal. Aug. 5, 2022) (denying motion to dismiss equal protection claim based on plaintiff's claim that he was initially stopped due to his race, because the officer's perceptions of the plaintiff's race were disputed questions of fact that cannot be resolved at the pleading stage); *Carrasco v. City of Glendora*, No. CV 21-05965-MWF (ASx), 2022 U.S. Dist.

1   LEXIS 214997, at *21 (C.D. Cal. Aug. 3, 2022) (where plaintiff's windows were
2   unobstructed prior to the stop, the officers' contention that they did not know
3   Plaintiff's race until he stepped out of the van was a disputed fact to be decided by
4   the jury).

5        Because Plaintiff's Equal Protection claim is firmly supported by both
6   statistical evidence of discriminatory effect and substantial circumstantial evidence
7   of discriminatory intent, Defendants' motion to dismiss this claim should be
8   denied.

9   ## D. Plaintiff Properly Pled a First Amendment Retaliation Claim Under
10      ## Section 1983

11        "'[A]s a general matter the First Amendment prohibits government officials
12  from subjecting an individual to retaliatory actions' for engaging in protected
13  speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v.*
14  *Moore*, 547 U.S. 250, 256 (2006)). "To state a First Amendment retaliation claim,
15  a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally
16  protected activity, (2) the defendant's actions would chill a person of ordinary
17  firmness from continuing to engage in the protected activity and (3) the protected
18  activity was a substantial or motivating factor in the defendant's conduct.'" *Capp*
19  *v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v.*
20  *Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).

21        Plaintiff's retaliation claim centers on Defendant Corporal Kapturkiewicz
22  chest-bumping him in direct response to his verbal complaints about the deputies'
23  misconduct. Mr. McCracken was unquestionably engaged in constitutionally
24  protected speech when he voiced concerns about the defendants' conduct, thereby
25  satisfying the first element. See *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)
26  ("[T]he First Amendment protects a significant amount of verbal criticism and
27  challenge directed at police officers.").

28        Regarding the second element, a reasonable jury could readily determine

---

that Defendant Corporal Kapturkiewicz' aggressive chest-bump would deter a person of ordinary firmness from continuing to exercise their protected speech rights. See *Saenz v. Chavez*, No. 1:11-cv-01872-AWI-SKO (PC), 2016 U.S. Dist. LEXIS 22721, at *26 (E.D. Cal. Feb. 24, 2016) (finding that the officer's push and twisting of the plaintiff's arm are adverse actions that would chill or silence a person of ordinary firmness from future protected activities).

Plaintiff's Complaint explicitly alleges that Defendant Corporal Kapturkiewicz' aggressive chest-bump occurred immediately following his criticism of the Corporal's unsubstantiated and insulting accusation regarding drug possession. *See* Plaintiff's Complaint, ¶65. This temporal proximity provides factually sufficient grounds to allege that his protected activity was a motivating factor behind the aggressive physical contact. *See Slice v. Ferriter*, 448 F. App'x 725, 726 (9th Cir. 2011) ("[w]here an adverse action occurs shortly after the protected conduct . . . the timing creates an inference of retaliatory motive."). Moreover, the apparent absence of any legitimate justification for aggressively chest-bumping Mr. McCracken further supports a finding of retaliatory intent. *See Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) (denying summary judgment on First Amendment claim where officer claimed he lacked retaliatory motive but a reasonable juror could find traffic stop was retaliatory in absence of "legitimate, articulate" reason for traffic stop). Additionally, courts consistently recognize that questions of retaliatory motive are properly reserved for jury determination. *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020) (recognizing that whether officer is motivated by discriminatory animus "involves questions of fact that normally should be left for trial").

In conclusion, Plaintiff has presented sufficient factual allegations to support each element of a First Amendment retaliation claim. The immediacy of Defendant Kapturkiewicz' aggressive physical response to protected speech, combined with the lack of any justifiable reason for such contact, creates a

compelling inference of retaliatory motive that warrants judicial consideration. As the Ninth Circuit has consistently held, such determinations of motive and intent are fundamentally factual questions that should be resolved by a jury rather than dismissed at the pleading stage. Accordingly, Plaintiff's First Amendment retaliation claim should proceed to allow for proper factual development and analysis.

### E.  Plaintiff Properly Pled a *Monell* Claim Under Section 1983

Defendants' motion to dismiss the *Monell* claim against the County of Inyo lacks merit and should be denied. Plaintiff has adequately alleged facts that establish municipal liability under established legal standards. As an initial matter, a plaintiff need not show evidence of a policy or deficient training; evidence of an informal practice or custom will suffice. *Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). If a plaintiff proves the existence of an unconstitutional policy or custom, the municipality may be liable, "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Navarro v. Block*, 72 F.3d 712, 714-15 (9th Cir. 1996). Normally, the question of whether a policy or custom exists would be a jury question. *Trevino*, 99 F.3d at 920.

Plaintiff's Complaint alleges the County and Inyo County Sheriff's Department have a custom, policy or practice of "[r]acial profiling and targeting African American motorists for unlawful stops and searches". Plaintiff's Complaint, ¶ 73(h). In support of this allegation, Plaintiff's Complaint cites concrete statistical evidence from the County's own reporting under the Racial and Identity Profiling Act ("RIPA"), which showed that Inyo County Sheriff's Department officers were 7.6 times more likely to stop Black drivers than White drivers. This statistical data is sufficient to establish the County and the Inyo County Sheriff's Department maintained a custom, policy or practice of pretextual, racially discriminatory traffic stops. See *Ramirez v. City of San Jose*, No. 21-cv-

08127-VKD, 2022 U.S. Dist. LEXIS 139710, 2022 WL 3139521, at *4 (N.D. Cal. Aug. 5, 2022) (concluding that statistics showing that "Latinx citizens made up 57% of the traffic stops while they comprised only 33% of the population" supported the existence of a pattern or practice of discriminatory conduct).

Defendant's reliance on *Gonzalez v. City of Tustin* is grossly misleading. In Gonzalez, the court did not assess whether Plaintiffs' cited RIPA statistics demonstrate deliberate indifference. *Gonzalez v. City of Tustin*, No. 8:23-cv-01274-FWS-ADS, 2024 U.S. Dist. LEXIS 99368, at *18 (C.D. Cal. June 4, 2024). The Gonzalez court merely noted that the plaintiffs in that case failed to specifically allege that racial profiling was the moving force behind their constitutional violations. *Id.* Here, by contrast, Plaintiff has explicitly alleged that racial profiling was a direct cause of the constitutional violations he experienced. *See* Plaintiff's Complaint, ¶ 82.

Plaintiff is not, as Defendants erroneously suggest, attempting to impose *Monell* liability predicated on isolated or sporadic incidents. The statistical evidence regarding racial disparities in traffic stops demonstrates that the County's practices were "persistent and widespread," and amounted to the "deliberate indifference" necessary to trigger municipal liability. See *Connick v. Thompson*, 563 U.S. 51, 62, (2011) ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability."). In short, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could readily conclude that the County had an informal policy or practice of pretextual traffic stops motivated by race. See, e.g., *Gibson v. Cty.of Washoe*, 290 F.3d at 1194-95 (2002) ("Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question."), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*,

833 F.3d 1060 (9th Cir. 2016) (en banc).

The defendants' argument that the failure to train claim is conclusory fundamentally mischaracterizes the detailed allegations in the complaint. Plaintiff has specifically alleged that despite receiving specific training programs related to anti-discrimination, unlawful retaliation, and proper search and seizure procedures, the defendant officers still engaged in the alleged unconstitutional conduct; that the County knew prior to the incident that its training program was insufficient to prevent the type of conduct experienced by the plaintiff; and that the County failed to adequately train its officers on constitutional limits of traffic stops, the proper use of K9 units, racial profiling, and the use of intimidation and excessive force. Plaintiff's Complaint, ¶¶ 76-80. These comprehensive allegations, coupled with the alleged prior instances of unlawful searches and seizures and RIPA data revealing the County's disproportionate treatment of Black motorists (*see* Plaintiff's Complaint, ¶75), are more than sufficient to state a plausible claim that the County was deliberately indifferent to the need for more or different training.

The ratification claim is also adequately pled. The complaint alleges that "the County's final decision maker ratified, or otherwise condoned, Defendants Deputy John Bartlett and Corporal Joseph Kapturkiewicz' conduct described in the Complaint." ¶ 81. This allegation, while concise, is sufficient at the pleading stage. Defendants' characterization of this allegation as "vague" ignores the substantial factual context provided throughout the detailed complaint. See *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) (*Monell* liability can be adequately alleged where there are (1) "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) those facts "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.") (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Accordingly, Defendants' motion to dismiss should be denied as to

1  Plaintiff's well-pleaded *Monell* claim.

2  **F.  Plaintiff Properly Pled a Battery Claim Under California Law**

3  California courts have held that a state law battery claim against an officer

4  "is the equivalent of a federal claim of excessive force." *Valdez v. City of San Jose*,

5  No. 4:09-CV-0176 KAW, 2013 U.S. Dist. LEXIS 160738, 2013 WL 6108052, at

6  *8-9 (N.D. Cal. Nov. 18, 2013) (citing *Brown v. Ransweiler*, 171 Cal. App. 4th

7  516, 527, 89 Cal. Rptr. 3d 801 (2009)). "In both, a plaintiff must prove that the

8  peace officer's use of force was unreasonable." *Id*. (citation omitted); *see also*

9  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1993) (holding that a

10  plaintiff must show unreasonable force as part of a prima facie case for battery).

11  As explained in Section IV(B), Defendant Corporal Kapturkiewicz'

12  retaliatory force was patently unreasonable, and the facts here drastically differ

13  from the *Morales* case that Defendants erroneously rely upon. Considering the

14  totality of the circumstances, there was absolutely no need to aggressively chest

15  bump Mr. McCracken. For the reasons stated herein, Defendants' motion to

16  dismiss Plaintiff's battery claim should be denied.

17  **G. Plaintiff Properly Pled a Claim for Intentional Infliction of**

18  **Emotional Distress Under California Law**

19  To prevail on a claim for intentional infliction of emotional distress

20  ("IIED"), Plaintiff must prove: "(1) outrageous conduct by the defendant; (2) the

21  defendant's intention of causing or reckless disregard of the probability of causing

22  emotional distress; (3) the plaintiff's suffering severe or extreme emotional

23  distress; and (4) actual and proximate causation of the emotional distress by the

24  defendant's outrageous conduct." *Trerice v. Blue Cross of Cal.*, 209 Cal.App.3d

25  878, 883 (1989). Outrageous conduct must "be so extreme as to exceed all bounds

26  of that usually tolerated in a civilized society." *Id*.

27  Courts have consistently held that conspiracy to unlawfully seize an

28  individual can constitute the type of "outrageous conduct" necessary to support an

1   IIED claim. See *Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1004 (N.D. Cal.

2   2011) (denying summary adjudication on plaintiff's claim for intentional infliction

3   of emotional distress because triable issues existed regarding false arrest and

4   conspiracy to falsely arrest). Similarly, use of excessive force can establish a prima

5   facie IIED claim. *See Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 926

6   (N.D. Cal. 2014) (concluding that a reasonable jury could conclude that officers

7   who intentionally kneeled on a suspect acted with reckless disregard for the

8   probability of causing emotional distress). Defendant Deputies' actions in

9   conspiring to racially profile, falsely detain and illegally search Plaintiff's vehicle,

10  as well as Defendant Kapturkiewicz' unwarranted force, resulted in severe

11  emotional distress and damage to Mr. McCracken. These actions satisfy the

12  "outrageous conduct" threshold required for IIED claims at the pleadings stage.

13  Accordingly, Defendants' motion to dismiss this claim should be denied.

14        **H. Plaintiff Properly Pled a Bane Act Claim Under California Law**

15        The Bane Act prohibits intentionally interfering with a person's civil rights

16  by way of threats, intimidation, or coercion. *Jones v. Kmart Corp.*, 17 Cal. 4th 329,

17  332 (1998).

18        To the extent that a Bane Act claim is premised on the unlawful

19  detention and arrest, the Ninth Circuit has held that a plaintiff "must allege threats

20  or coercion beyond the coercion inherent in a detention or search in order to

21  recover under the Bane Act." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196

22  (9th Cir. 2015); *see also Allen v. City of Sacramento*, 234 Cal. App. 4th 41 (2015)

23  ("[A] wrongful arrest or detention, without more, does not satisfy both elements of

24  [the Bane Act]."); *Quezada v. City of L.A.*, 222 Cal. App. 4th 993 (2014) ("The

25  coercion inherent in detention is insufficient to show a Bane Act violation.").

26  Plaintiff's Complaint satisfies this requirement by alleging that: (1) Defendants

27  repeatedly demanded that Plaintiff admit to possessing drugs despite having no

28  factual basis for such accusations; and (2) Corporal Kapturkiewicz aggressively

chest-bumped Plaintiff in direct retaliation for Plaintiff exercising his First Amendment right to criticize police conduct. These allegations go well beyond the "coercion inherent in detention" and demonstrate precisely the kind of threatening and intimidating conduct the Bane Act was designed to address.

Moreover, the elements of a Bane Act excessive force claim are essentially identical to those of a § 1983 excessive force claim, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), though a Bane Act claim additionally requires a showing of "a specific intent to deprive that person of those [constitutional] rights," which can be proven by "reckless disregard" for those same rights. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). In this case, the chest bump in particular represents a physical act of intimidation that occurred after Defendants told Plaintiff he was free to leave, showing it was not inherent to the detention but rather a separate act of coercion specifically intended to punish Plaintiff for making a verbally complaint, which as discussed above clearly violates the First Amendment.

Based on the foregoing, Defendants' motion to dismiss Plaintiff's Bane Act claim should be denied.

## I. Plaintiff Properly Pled a Ralph Act Claim Under California Law

California Civil Code section 51.7, the Ralph Act, provides that "[a]ll persons within [California] have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property" because of race. Cal. Civ. Code §§ 51.7(a), 51(b). In order to establish a section 51.7 claim, a plaintiff must show "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009) (citation omitted).

The circumstances of Mr. McCracken's detention support the inference that his race motivated the Defendants' actions throughout the traffic stop, including Defendant Kaptukiewicz' use of force. Mr. McCracken was pulled over for a minor traffic violation (speeding). After receiving a citation, Mr. McCracken was not permitted to leave and was repeatedly questioned about possessing drugs without any factual basis. A reasonable juror could conclude that this occurred because McCracken was an African American man traveling in the area at night with a Caucasian female companion. This is supported by the fact that a K9 unit was specifically deployed to search his vehicle despite the lack of any reasonable suspicion or probable cause, and the continued accusations of drug possession even after the K9 failed to alert. A reasonable juror could also conclude that race motivated the decision to order Mr. McCracken out of his vehicle and force him to stand in the frigid cold while his vehicle was searched without consent. A reasonable juror could also determine that race played a role in Corporal Kapturkiewicz' decision to physically confront McCracken with an aggressive chest bump when McCracken criticized the officers' unfounded accusations. The fact that data shows Inyo County Sheriff's Department officers were 7.6 times more likely to stop Black drivers than white drivers further supports this inference of racial motivation.

The facts alleged in the Complaint, when viewed in their totality and in the light most favorable to Plaintiff, support a reasonable inference that Defendants' conduct was motivated by Plaintiff's race. See *Adamson v. City of S.F.,* No. 13-cv-05233-DMR, 2015 U.S. Dist. LEXIS 124588, at *25-27 (N.D. Cal. Sep. 17, 2015) (denying summary judgment on Ralph Act claim where African American plaintiff pulled over for minor traffic violation was immediately questioned about probation/parole status, ordered out of vehicle after challenging officer's question, and subjected to use of force, finding reasonable juror could conclude race motivated officers' actions throughout encounter). Accordingly, Defendants'

1  motion to dismiss Plaintiff's Ralph Act claim should be denied.

2  **J. Defendant Kapturkiewicz Is Not Entitled To Qualified Immunity On**

3  **Plaintiff's Excessive Force Claim**

4  "In assessing a qualified immunity defense on a motion to dismiss, a court

5  must 'regard all of the allegations in [the] complaint as true.'" *Hernandez v. City of*

6  *San Jose*, 241 F. Supp. 3d 959, 975 (N.D. Cal. 2017), *aff'd*, 897 F.3d 1125, 1139

7  (9th Cir. 2018) (quoting *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). "A

8  court should deny a motion to dismiss on the basis of qualified immunity if the

9  complaint 'allege[s] acts to which qualified immunity may not apply.'" *Id*.

10  (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). "Under this

11  standard, in many cases it is impossible to determine based on a complaint alone

12  that qualified immunity is warranted." *Id*.

13  Here, accepting Plaintiff's allegations as true, Defendant Kapturkiewicz

14  aggressively chest bumped Plaintiff when there was absolutely no need to use any

15  force whatsoever. The Ninth Circuit has held that "when the governmental interest

16  is insubstantial, the application of even minimal force may be unreasonable".

17  *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012). Accordingly,

18  Defendant Kapturkiewicz had sufficient notice that his force used given the

19  circumstances was unreasonable and violative of clearly established Fourth

20  Amendment law. Therefore, Defendant Kapturkiewicz is not entitled to qualified

21  immunity.

22  **K. Because Amendment Will Not Be Futile, Plaintiff Should Be Granted**

23  **Leave To Amend The Complaint**

24  "Generally, Rule 15 advises the court that leave to amend shall be freely

25  given when justice so requires." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

26  1048, 1051 (9th Cir. 2003). "This policy is to be applied with extreme liberality."

27  *Id*. (cleaned up). "Whether leave to amend should be granted is generally

28  determined by considering the following factors: (1) undue delay; (2) bad faith; (3)

1  futility of amendment; (4) prejudice to the opposing party." *Levine v. Safeguard*
2  *Health Enterprises, Inc.*, 32 Fed.App'x. 276 (9th Cir. 2002).  "Not all factors merit
3  equal weight." *Eminence Capital, LLC*, 316 F.3d at 1051.  The Ninth Circuit has
4  repeatedly held "the consideration of prejudice to the opposing party [] carries the
5  greatest weight." *Id*. (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185
6  (9th Cir. 1987).)  "Absent prejudice, or a strong showing of any remaining *Foman*
7  factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to
8  amend." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986
9  (9th Cir. 2011).  "The party opposing amendment bears the burden of showing
10 prejudice." *DCD Programs, Ltd.*, 833 F.2d at 187.

Because Defendants cannot demonstrate that they would suffer any prejudice from an amended complaint, Plaintiff should be allowed to amend his complaint if the Court finds any deficiency.

## V. <u>CONCLUSION</u>

Based on the foregoing, this Court should deny the Defendants' motion to dismiss in its entirety. If the Court disagrees with Plaintiff's position, Plaintiff respectfully requests additional leave to amend the complaint because any deficiency can be easily cured.

Dated: April 24, 2025              **PLC LAW GROUP, APC**

                                   <u>*/s/ Lauren K. McRae*</u>
                                   Peter L. Carr, IV
                                   Na'Shaun L. Neal
                                   Lauren K. McRae
                                   Attorneys for Plaintiff
                                   Khaliq McCracken